# 2006 DTA 95

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL II**

MARÍA I. DE JESÚS SÁNCHEZ
Recurrente

v.

ADMINISTRACIÓN DE REGLAMENTOS Y PERMISOS (ARPE)
Apelada

Núm. KLRA-04-00992

San Juan, Puerto Rico, a 29 de junio de 2006

Panel integrado por su Presidenta, la Juez Bajandas Vélez,
y los Jueces Aponte Hernández y González Vargas

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos la Sra. María I. De Jesús Sánchez (la recurrente o la Sra. De Jesús) mediante el recurso de revisión judicial de epígrafe. En el mismo nos solicita que revoquemos la resolución emitida por la Junta de Apelaciones del Sistema de Administración de Personal (JASAP) el 16 de julio de 2004 y notificada el 23 de igual mes y año. ▮ A través de dicha resolución, JASAP declaró ha lugar la apelación incoada por la recurrente en la que cuestionó la clasificación asignada a su puesto en la Administración de Reglamentos y Permisos (ARPE o la recurrida) y clasificó el mismo de manera distinta a la reclamada por ella.

Analizadas las comparecencias de las partes y el derecho aplicable, resolvemos confirmar la resolución recurrida.

### I

La Sra. De Jesús ocupó el puesto transitorio de Funcionario Administrativo I en la Oficina de Comunicaciones de ARPE desde el 16 de diciembre de 1998.

El 1 de agosto de 2000, ARPE notificó a la recurrente que conforme a un nuevo Plan de Clasificación su puesto fue reclasificado como Representante de Servicios Internos I con un sueldo de $1,396.00 y un diferencial de $313. Además, advirtió a ésta que de no estar de acuerdo con su reclasificación, podía solicitar una revisión administrativa en la Oficina de Recursos Humanos. Cónsono con tal advertencia, la Sra. De Jesús solicitó una revisión de la clasificación otorgada. Así las cosas, el 6 de septiembre de 2000, ARPE le informó a la recurrente que a partir de 1 de julio de 2000 se le concedía el puesto de Representante de Servicios Internos I como empleada de carrera.

Posteriormente, ARPE citó a la Sra. De Jesús ante el Comité de Revisión para discutir los pormenores relacionados a su reclamación. En comunicación escrita fechada el 27 de diciembre de igual año, ARPE le informó a la Oficina Central de Asesoramiento Laboral y de Administración de Recursos Humanos (la OCALARH) que luego de *"atender mediante un procedimiento de entrevistas internas los planteamientos de aquellos empleados que entendieron quedaron adversamente afectados por la implantación [del referido Plan de Clasificación]"*, ■ concluyó que había detectado la necesidad de realizar correcciones en algunas de las clasificaciones anteriormente otorgadas. Con relación a la clasificación de la Sra. De Jesús como Representante de Servicios Internos I, el Ing. Casiano recomendó que se clasificara a ésta como Facilitador Administrativo I con efectividad al 1 de julio de 2000. En ese mismo día, el Administrador le notificó a la recurrente que las modificaciones a la clasificación y/o retribución que el Comité de Revisión recomendó en su caso habían sido referidas a la OCALARH para su evaluación, análisis y aprobación y que, posteriormente, le informarían la determinación final correspondiente.

Después de que la Sra. De Jesús cursara varias comunicaciones escritas a ARPE en las cuales solicitó que se modificara la clasificación de su nombramiento conforme a lo recomendado por el aludido Comité de Revisión, el 18 de septiembre de 2001, la recurrida le notificó lo siguiente:

*"Luego de evaluar cada caso en particular, hemos encontrado que algunos no cuentan con los elementos necesarios que sustenten la determinación que tomara el Comité Evaluador. Le solicitamos a la Oficina de Recursos Humanos copia de los documentos que fueron sometidos en las vistas administrativas. Lamentablemente no existen tales copias."*

Por tal motivo, próximamente nos comunicaremos con los empleados bajo las circunstancias arriba indicadas, para informarles la celebración de una vista administrativa que nos permita aclarar nuestras interrogantes y proceder conforme a derecho. ■

El 13 de noviembre de 2001, ARPE le informó a la Sra. De Jesús que, conforme a la Tabla de Equivalencias entre las clases de puestos comprendidas en el referido Plan de Clasificación, su puesto había sido clasificado correctamente como Representante de Servicios Internos I. Ante esta notificación, la Sra. De Jesús presentó una apelación ante JASAP el 7 de diciembre de 2001.

Después de celebrar una vista administrativa en la que rindieron testimonio tanto la propia recurrente como testigos peritos presentados por ambas partes, JASAP emitió la resolución recurrida el 16 de julio de 2004. En ésta, acogió el informe del Oficial Examinador a quien se le delegó la apelación de la recurrente y señaló lo siguiente:

*"A la luz de las determinaciones de hechos y conclusiones de derecho que contiene el aludido informe del Oficial Examinador, resolvemos declarar HA LUGAR la apelación; por cuanto la clasificación de Representante de Servicios Internos I no corresponde a las funciones que ésta ejerce. Conforme a la prueba presentada, las funciones esenciales de la apelante, aunque no corresponden tampoco a la clasificación de Facilitador Administrativo reclamada por ésta, si enmarcan favorablemente en los conceptos del nivel II de la serie de clase Representante de Servicios Internos. Por tanto, a tono con lo dispuesto en el Reglamento de*

*Personal: Areas Esenciales al Principio de Mérito, sección 6.1, inciso 1,* se justifica clasificar el puesto ocupado por la apelante a dicho nivel, y por tratarse de una **"clasificación original errónea",** tal acción será efectiva a la fecha de la implantación del Plan de Clasificación." (Énfasis en el original). ■

Inconforme, la Sra. De Jesús presentó el recurso de revisión de epígrafe. A través del mismo, señaló los siguientes errores:

"*Erró la JASAP al no resolver que la acción de la apelada-recurrida (ARPE) dejando sin efecto una determinación, previa y final de la Autoridad Nominadora de la propia agencia (ARPE), clasificando a la apelante-recurrente en su puesto, como Facilitador Administrativo I, es una violación a sus derechos constitucionales a un debido proceso de ley y de igual paga por igual trabajo.*

*Erró la JASAP al resolver adoptar el informe del oficial examinador en el caso de autos, el cual no está basado en la totalidad de la prueba, en el récord administrativo y que excluyó, incorrecta y arbitrariamente, evidencia pertinente, todo lo que constituye una actuación irrazonable y un abuso de discreción.*"

Luego de otorgarle plazo adicional, el Procurador General, en representación de ARPE, presentó su escrito de oposición el 30 de marzo de 2005.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II

Sabido es que la función revisora de las decisiones administrativas concedidas a los tribunales apelativos se reduce a determinar si la actuación de la agencia está dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable. *T-JAC, Inc. v. Caguas Centrum Limited,* 148 D.P.R. 70 (1999). De igual manera, los tribunales apelativos deben conceder gran deferencia a las decisiones administrativas en consideración de la vasta experiencia y conocimiento especializado que ésta posee. *Rivera v. A & C Development Corp.,* 144 D.P.R. 450 (1997).

La Ley de Procedimiento Administrativo Uniforme (LPAU) en su Sec. 4.5 delimita el alcance de la revisión judicial de las decisiones administrativas. La misma dispone que las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obre en el expediente administrativo. No obstante, las conclusiones de derecho serán revisables en todos sus aspectos. 3 L. P.R.A. § 2175. Así pues, un tribunal apelativo tiene el deber de estudiar la totalidad del expediente y examinar si existe evidencia que sostenga la decisión de la agencia o si por el contrario, es incompatible con ésta. *Assoc. Ins. Agencies, Inc. v. Com. de Seg. P.R.,* 144 D.P.R. 425 (1997). Si la interpretación de los hechos es razonable, los tribunales, de ordinario, deben sostener el criterio de la agencia y no sustituirlo por el suyo. *Id.* Por el contrario, si el tribunal, luego de un estudio y análisis ponderado, descubre que se infringieron directamente valores constitucionales o la actuación administrativa fue arbitraria o irrazonable, el tribunal puede sustituir el criterio de la agencia por el suyo y revocar el dictamen administrativo. *Pérez Vélez v. VPH Motors Corp.,* **2000 J.T.S. 177**.

Así pues, el criterio rector para los tribunales, será la razonabilidad en la actuación de la agencia recurrida. Al finalizar su función revisora, el tribunal está compelido a considerar la especialización y experiencia de la agencia sobre los asuntos y/o materias que estuvieron ante su consideración. Por tanto, en el descargo de su función deberá caracterizar entre asuntos de discernimiento estatutario o cuestiones de especialización administrativa.

Por otra parte, como corolario al principio de igual paga por igual trabajo consagrado tanto en el Art. II, Sec. 16 de la Constitución del Estado Libre Asociado, 1 L.P.R.A., como en la Ley Federal de Igual Paga por

Igual Trabajo (*Equal Pay for Equal Work*), 29 U.S.C.A. 201 *est seq*, la sección 4.2 de la Ley de Personal del Servicio Público, 3 L.P.R.A. § 1332, establece la jerarquía relativa como criterio a tomarse en consideración al asignar la retribución de los puestos en el servicio público. La misma sección, en su inciso (9), dispone que la determinación de la jerarquía relativa entre las distintas clases será responsabilidad de la autoridad nominadora. No obstante, las acciones que dicha autoridad tome a estos fines "*deberán responder a un patrón de lógica interna, basado en la naturaleza y complejidad de las funciones, de manera que se mantengan diferencias razonables en salarios.*"

Nuestro Tribunal Supremo ha expresado que la clasificación de puestos es una prerrogativa gerencial, por tratarse de un instrumento para la administración de los recursos humanos. *Mercado Vega v. U.P.R.*, 128 D.P.R. 273, 285 (1991). A pesar de ello, la autoridad del patrono no es absoluta, ya que cada empleado tiene derecho a ser correctamente clasificado. De esta forma, le corresponde a la autoridad nominadora la plena facultad de cumplir con la misión de la agencia y decidir cuáles son las funciones necesarias y los requisitos que debe poseer el incumbente de cada puesto específico. *Id.*

Cónsono con ello, el Plan de Clasificación de una agencia pretende establecer una organización de las clases de puestos que responda a la estructura funcional de la agencia. La separación de las clases de puestos y el orden asignado considerará la naturaleza y complejidad de los requisitos, tareas y deberes exigidos a cada clase de puesto con el propósito de clasificarlas en un orden progresivo de grados de relevancia a la estructura organizativa de la agencia.

La Ley de Retribución Uniforme, Ley Núm. 89 de 12 de julio de 1979, 3 L.P.R.A. sec. 760a *et seq.*, impone unos parámetros para guiar las decisiones retributivas del administrador individual, de forma que éstos cumplan con la obligación de proveer un tratamiento equitativo y justo en la fijación de sueldos a cada una de las clases de puestos. 3 L.P.R.A. sec. 760d. La diferencia en sueldo entre los diversos tipos en una escala debe responder a la consideración de diversos factores tales como: los niveles de responsabilidad y dificultad que envuelven los puestos; el grado de discreción que se requiere en el descargo de los deberes y responsabilidades; los requisitos mínimos para el descargo de los deberes y responsabilidades; el grado de dificultad en el reclutamiento de empleados idóneos; las oportunidades de ascenso; las condiciones de trabajo; el costo de vida; y las posibilidades fiscales. 3 L.P.R.A. sec. 760(a); Véase además, *Aulet Lebrón v. Departamento de Servicios,* 129 D.P.R. 1 (1991).

### III

En su primer señalamiento de error, la Sra. De Jesús arguye que ARPE violó su derecho a un debido proceso de ley cuando, luego de alegadamente tomar una determinación final en cuanto a su clasificación como Facilitador Administrativo I, cambió de posición y la clasificó como Representante de Servicios I.

Por su parte, ARPE alega que las determinaciones iniciales de su Comité de Revisión, que recomendó la reclasificación de la Sra. De Jesús como Facilitador Administrador I, nunca tuvieron carácter final y que, por ende, estaban sujetas a la posterior aprobación de la recurrida. Le asiste la razón a ARPE.

Surge claramente del récord ante nos que cuando la recurrida le informó a la Sra. De Jesús que iba a recomendar a la OCALARH su clasificación como Facilitador Administrativo I, dicha notificación **no** era final. Como hemos visto, ante la solicitud de revisión administrativa de la recurrente, el Comité de Revisión de ARPE hizo una determinación inicial que ciertamente apuntaba a que las funciones de ésta ameritaban una reclasificación. No obstante, la recurrida, en vez de reclasificar a la Sra. De Jesús, decidió enviar la recomendación del aludido Comité de Revisión a la OCALARH para que ésta la evaluara, analizara y **aprobara**. Según la recurrente, ARPE envió la recomendación a OCALARH bajo la errónea impresión de que necesitaba su aprobación para ponerla en vigor por estar vigente una veda electoral. ■ Independientemente de las razones que motivaron la acción de la recurrida, lo cierto es que la clasificación de la Sra. De Jesús como

Facilitador Administrativo I nunca se concretó. En consecuencia, cuando a principios de 2001 la recurrente le solicitó a ARPE que la reclasificara como Facilitador Administrativo I, dicha agencia administrativa estaba facultada en ley para evaluar nuevamente su solicitud. En ese proceso de evaluación, la recurrida encontró que faltaba prueba en el expediente de la Sra. De Jesús que justificara que fuera reclasificada como Facilitador Administrativo I. Así pues, la recurrente tenía que presentar prueba a los efectos de demostrar que la naturaleza y complejidad de sus funciones habían cambiado de manera tal que ameritaba una reclasificación. Sin embargo, de las propias alegaciones de la Sra. De Jesús en el recurso de epígrafe surge que desde que ésta comenzó a trabajar en ARPE "*siempre ha realizado las mismas funciones*". ■ Aún así, luego de celebrada la vista administrativa en JASAP, ésta resolvió que la Sra. De Jesús sí ameritaba una reclasificación como Representante de Servicios II.

No obstante, la recurrente aduce que ARPE fue arbitraria porque su perito, la Sra. Sarah Chiesa González (la Sra. Chiesa o la perito de ARPE), recomendó que se reclasificara a la Sra. De Jesús como Representante de Servicios II, cuando dicha clasificación tampoco se ajusta a la naturaleza y complejidad de las funciones de ésta. Un análisis del expediente en autos nos hace concluir que la recurrente no tiene la razón.

Como parte del proceso para implantar el nuevo Plan de Clasificación y Retribución de ARPE, ésta le suministró a la recurrente un cuestionario de clasificación en enero de 2000. [7] En dicho cuestionario, la Sra. De Jesús expuso que realizaba las siguientes funciones:

"*Ayudar a funcionarios de mayor jerarquía en la ejecución, seguimiento y coordinación de actividades administrativas realizadas en la Oficina de Comunicaciones.*

*Custodiar el equipo del área de comunicaciones.*

*Trabajar con las solicitudes de equipo: audio, video y fotografía.*

*Participar y colaborar activamente en la preparación de material informativo que la agencia provee al público general.*

*Participar en la confección y diseño del periódico ARPEXPRESO y también en los artículos que se preparan para el periódico.*

*Tramitar y dar seguimiento a las llamadas solicitadas por el supervisor.*

*Atender y orientar sobre los servicios que ARPE brinda al público.*

*Recibir correspondencia y distribuir la misma.* .

*Coordinar actividades relacionadas con ARPE.*

*Preparar, coordinar y tramitar las requisiciones.*

*Redactar y enviar carta a los medios para aclarar cualquier situación con relación a nuestra agencia.*

*Llevar registro de noticias de prensa escrita relacionadas a ARPE.*

*Acompañar a la Directora de Comunicaciones a reuniones, adiestramientos, conferencias de prensa y actividades relacionadas con ARPE.*

*Enviar información sobre actividades a celebrarse en ARPE.*

*Preparar informe sobre llamadas telefónicas realizadas en la Oficina de Comunicaciones.*

*Ayudar al supervisor a mantener informado al público sobre las gestiones que realiza ARPE.*

*Ayudar a un funcionario de mayor jerarquía en la redacción, traducción, impresión y distribución de material informativo sobre los programas y actividades de ARPE.*

*Ayudar a un funcionario de mayor jerarquía en la organización, dirección de campañas, seminarios y conferencias sobre los programas y actividades antes mencionadas.*

*Atender a personas, funcionarios, legisladores y otras personas que acuden a ARPE en busca de información especializada sobre los diferentes programas y servicios que ofrece la Administración y suministrarle la orientación y material solicitado.*

*Acompañar a la directora a reuniones, conferencias de prensa y diferentes actividades a celebrarse en otras entidades públicas o privadas, sobre asuntos que conciernan a ARPE.*

*Ayudar en la organización de actividades.*

*Redactar avisos de prensa, radio y televisión, contestando aquellos artículos que aparezcan en la prensa del país relacionados con problemas que en una forma u otra afecten o estén relacionados con ARPE.*

*Atender querellas y/o consultas enviadas por los ciudadanos perjudicados, por alguna decisión de ARPE o por la conducta de sus empleados.*

*Ayudar a establecer y mantener relaciones profesionales con las agencias, empresas privadas, organizaciones cívicas, privadas y profesionales y la comunidad en general.*

*Realizar cualquier otra tarea afín que se encomiende."* ■

El aludido cuestionario fue uno de los documentos utilizados por la perito de ARPE para concluir que las citadas tareas de la Sra. De Jesús correspondían a la clasificación de Representante de Servicios Internos II. Para llegar a dicha conclusión, la Sra. Chiesa preparó una *Tabla Comparativa de las Especificaciones de Clase de Representante de Servicios I, Representante de Servicios Internos II y Facilitador Administrativo I.* ■ De ésta surge que tanto la naturaleza del trabajo de Representante de Servicios Internos I como la de Representante de Servicios Internos II es *"trabajo administrativo que comprende la supervisión o ejecución de tareas administrativas relacionadas con los servicios internos o actividades operacionales que se generan en la Agencia".* ■ La diferencia entre una y otra clasificación se centra en que mientras una Representante de Servicios Internos I realiza trabajo de **moderada** complejidad y ejerce su iniciativa y criterio propio también de manera moderada, una Representante de Servicios Internos II realiza trabajos administrativos de mayor responsabilidad y ejerce iniciativa y criterio propio, a partir de las instrucciones generales impartidas por su supervisor. Ambas clasificaciones requieren trabajo como ayudante de un funcionario de mayor jerarquía.

Por su parte, la naturaleza del trabajo de Funcionario Administrativo I es *"trabajo **profesional** y administrativo que consiste en colaborar en la organización, supervisión y coordinación de los trabajos y actividades administrativas en una oficina"* ■ de ARPE (énfasis nuestro). Como vemos, la diferencia esencial entre los puestos de Representante de Servicios Internos I y II y Facilitador Administrativo I es que este último tiene carácter profesional y administrativo, mientras que los primeros sólo tienen naturaleza

administrativa. Los efectos de esta distinción son notables en algunas de las tareas que le corresponde al Facilitador Administrativo I, entre las cuales se encuentran: colaborar en la evaluación, análisis y solución de problemas de operación para mantener la mayor eficiencia y el mejor rendimiento conforme con los objetivos y las prioridades establecidas; colaborar en la planificación, dirección y desarrollo de estudios técnicos especializados relacionados con los asuntos a su cargo y formula recomendaciones para la solución de los mismos; desarrolla normas y procedimientos, traza programas de trabajo e interpreta estatutos y reglamentos aplicables a su actividad de trabajo y **determina necesidades de adiestramiento técnico o profesional del personal bajo su responsabilidad** y necesidades de equipo, materiales y gastos de viaje, para señalar prioridades presupuestarias por directrices de su supervisor. ▇ Como vemos, las tareas a cargo del puesto de Facilitador Administrador I no sólo son complejas, sino que tienen un alto grado de responsabilidad que envuelven la supervisión directa de personal bajo su cargo y la delineación de los planes de trabajo necesarios para adelantar los objetivos de la agencia. Ciertamente, luego de realizar una comparación entre las tareas de la Sra. De Jesús con las del puesto de Facilitador I, es forzoso concluir que las mismas **no** son compatibles.

No surge del récord ante nos que la recurrente tenga empleados a su cargo ni que colabore en la formulación y ejecución de la política pública de ARPE. Las funciones de ésta, aunque importantes, se limitan a colaborar en los trabajos administrativos en la Oficina de Comunicaciones de ARPE por lo cual no tienen el grado de complejidad que poseen las tareas de un Facilitador Administrador I. En consecuencia, resolvemos que no erró el Oficial Examinador de JASAP al concluir que las tareas de la Sra. De Jesús correspondían a las de Representante de Servicios Internos II, y no a las de Facilitador Administrativo I.

De otro lado, arguye la Sra. De Jesús que el Oficial Examinador de JASAP no incluyó en su informe prueba desfilada en la vista administrativa relacionada a las razones que motivaron el reclutamiento de la recurrente en ARPE. Específicamente, hace referencia a una carta suscrita al Administrador de ARPE por la Directora de la Oficina de Comunicaciones (la Directora) de dicha agencia el 12 de noviembre de 1998. A través de la misma, la Directora esbozó lo siguiente:

*"Actualmente, la Oficina de Comunicaciones genera y coordina un sinúmero [sic] de iniciativas y actividades tanto local como internacionalmente. Esto mantiene fuera de la oficina, tanto a esta servidora como a la Directora de Relaciones Públicas.*

*Por tal razón, solicito que se reclute a una persona que realize [sic] **funciones administrativas y secretariales** en nuestra oficina. Debe tener vasto conocimiento en el manejo de computadora y ser completamente bilingüe.*

*Además, deberá poseer habilidades y experiencia en el manejo y trato con el público."* (Énfasis nuestro).
▇

Como respuesta a la citada comunicación, la Directora Interina de la Oficina de Recursos Humanos le recomendó al Administrador de ARPE que reclutara a una persona para satisfacer las necesidades de la Oficina de Comunicaciones, puesto que ésta *"genera y coordina un sinnúmero de iniciativas y actividades tanto local como internacionalmente [las cuales] mantiene[n] fuera de la Oficina a la Directora de la Oficina de Comunicaciones y a la relacionista pública, por la cual esta persona estaría frecuentemente representándolas durante su ausencia"*. ▇ Esta última comunicación es utilizada por la Sra. De Jesús como fundamento de que, en ausencia de la Directora, ella la sustituye en todas sus funciones. No le asiste la razón a la recurrente.

De la propia solicitud de la Directora para que se reclutara a una persona surge que se necesitaba una persona para realizar funciones administrativas y secretariales. En momento alguno, dicha funcionaria solicitó a una persona para que ocupara su puesto interinamente cuando ella se ausentara, ni mucho menos pidió que se reclutara a una persona con las credenciales necesarias para ejercer un puesto de carácter gerencial en ARPE.

Por ende, es imperativo concluir que cuando la Directora Interina de la Oficina de Recursos Humanos afirmó que la persona a ser reclutada representaría a la Directora en los momentos en que ella no estuviere en la oficina, se refería a trabajos estrictamente administrativos. Además, cabe señalar que del cuestionario de clasificación realizado por la recurrente tampoco se desprende que ella tuviera, como función, sustituir a su supervisora ante la ausencia de ésta. En consecuencia, carece de mérito el argumento de la Sra. De Jesús en cuanto a que las razones que motivaron su reclutamiento son fundamento suficiente para reclasificarla como Facilitador Administrador I.

Por otro lado, la recurrente alude a que el Oficial Examinador de JASAP falló en realizar algún tipo de análisis en cuanto a las funciones realizadas por la Sra. De Jesús y se limitó a sustituir su criterio por el de la testigo perito presentada por ARPE. A su vez, ARPE arguye que el Oficial Examinador, en el ejercicio de su rol como juzgador de la evidencia desfilada ante él, evaluó los análisis presentados según la consistencia y firmeza de las presentaciones de los testigos y adoptó el testimonio que le mereció credibilidad. Tiene razón la recurrida.

Del informe del aludido Oficial Examinador se desprende que éste realizó un análisis del testimonio e informe del testigo perito presentado por la Sra. De Jesús. Sin embargo, dicho testigo no le mereció credibilidad, puesto que su informe escrito carecía de un análisis comparativo y porque en el contrainterrogatorio incurrió en contradicciones. Recordemos que este Tribunal le debe gran deferencia no sólo a las determinaciones de hechos de JASAP, sino a la apreciación de la prueba testimonial presentada ante dicho foro administrativo. La recurrente no nos ha puesto en posición de determinar que el Oficial Examinador de JASAP incurrió en tal arbitrariedad o abuso de discreción que nos mueva a apartarnos de la deferencia debida.

Finalmente, alega la recurrente que erró el Oficial Examinador de JASAP al excluir dos certificaciones de sus supervisoras en las que éstas confirmaban lo testificado por la Sra. De Jesús en cuanto a sus funciones. Hemos evaluado dichas certificaciones y, sin entrar en los méritos de la corrección de la exclusión realizada, concluimos que las mismas no constituyen prueba en el récord que requiera que revoquemos la resolución recurrida. Ambas certificaciones corroboran las funciones que la Sra. De Jesús esbozó en su cuestionario de clasificación y que ameritaron que JASAP la reclasificara como Representante de Servicios Internos II. Por ende, no constituyen prueba de que tal reclasificación debió ser como Facilitador Administrativo I. Así las cosas, falló la recurrente en señalarnos prueba en el expediente administrativo que impida que sostengamos la decisión de JASAP.

## IV

Por los fundamentos antes expuestos, se confirma la resolución emitida por la Junta de Apelaciones del Sistema de Administración de Personal el 16 de julio de 2004 y notificada el 23 de igual mes y año.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones

### ESCOLIOS 2006 DTA 95

1. Para la fecha en que se suscitan los hechos en este caso, JASAP aún no había sido eliminada como organismo administrativo. Como se sabe, la Ley Núm. 184 de 3 de agosto de 2004, conocida como Ley para la Administración de los Recursos Humanos en el Servicio Público, creó la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (CASARH) como organismo apelativo para atender los casos de personal.

2. Apéndice de la recurrente, pág. 117.

**3.** Apéndice de la recurrente, pág. 128.

**4.** Véase Resolución recurrida, apéndice de la recurrente, págs. 1-2.

**5.** Véase nota al calce número 22 del recurso de revisión de epígrafe, pág. 10.

**6.** Véase recurso de epígrafe, pág. 4.

**7.** Apéndice de la recurrente, pág. 143.

**8.** Apéndice de la recurrente, págs. 88-89.

**9.** Apéndice de la recurrida, pág. 6.

**10.** *Id.*

**11.** Apéndice de la recurrida, pág. 18.

**12.** Apéndice de la recurrida, pág. 7.

**13.** Apéndice de la recurrente, pág. 82.

**14.** Apéndice de la recurrente, pág. 83.

**15.** Véase determinaciones de hechos números 9 y 10 del Informe del Oficial Examinador, Apéndice de la recurrente, pág. 6.